**COUNTY COUNCIL OF NORTHAMPTON COUNTY,**
Plaintiff,

v.

**SHL SYSTEMHOUSE CORP., Defendant,**

v.

**NORTHAMPTON COUNTY,**
Third Party Defendant.

No. Civ.A. 98–0088.

United States District Court,
E.D. Pennsylvania.

Sept. 3, 1998.

Karl F. Longenbach, Bethlehem, PA, for Plaintiff.

Ronald P. Schiller, Joseph Kernen, Elizabeth J. Feeney, Piper & Marbury L.L.P., Philadelphia, PA, for Defendant.

Daniel B. Huyett, Matthew W. Rappleye, Stevens & Lee, Reading, PA, for Third Party Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is Defendant, SHL Systemhouse Corp.'s ("Systemhouse" or "Defendant"), Motion for Protective Order requesting that Systemhouse's documents containing proprietary business and technological information be protected from dissemination to the public and to Systemhouse's competitors. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Systemhouse contracted with Northampton County (the "County") to provide emergency 911 services. Since Systemhouse went "live" with the 911 services on July 30, 1997, the County has had numerous complaints and problems with the system and numerous disputes with Systemhouse over the contract provisions, including whether a County representative could have unfettered access to the Systemhouse Communication Center. These disputes have spawned the instant litigation. Currently, the case is in the discovery phase and Systemhouse is concerned that if it provides the County with the requested information without a confidentiality agreement in place, the County will disseminate this information to Systemhouse's competitors. Systemhouse seeks to protect the following categories of information from public dissemination:

1) Technical equipment specifications and pricing information not publicly available and generally limited to Systemhouse personnel;

2) Technical selection criteria utilized by Systemhouse for equipment relating to the Northampton County Communications Center (the "Communications Center");

3) Technical information relating to the interaction of the Communications Center equipment with other Systemhouse equipment;

4) Profit and profit margin information relating to the Communications Center;

5) Cost information relating to the Communications Center;

6) Pricing information relating to the Communications Center;

7) Staffing analyses and projections relating to the Communications Center;

8) Project management analyses, projections, plans and techniques relating to the Communications Center;

9) Non-public personnel and recruiting files;

10) Non-public documents (including those from, to and relating to Rural/Metro Corporation) relating to system integration or otherwise relating to matters outside of the Communications Center; and

11) Proprietary training and procedures files in cases where Systemhouse takes steps to keep these files, rules or procedures private and not generally available to the public.

(Def.'s Mem. at Ex. A).

## DISCUSSION

Federal Rule of Civil Procedure 26(c)(7) provides that a court, "for good cause shown," can order that "a trade secret or other confidential research development, or commercial information not be revealed or be revealed only in a designated way." Fed. R.Civ.P. 26(c)(7). Our Court of Appeals has determined that

"Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir.1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). The burden of justifying the confidentiality of each and every document sought to be covered by a protective order

remains on the party seeking the order. *Id.* at 1122.

*Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786–87 (footnote omitted).

■ The federal courts have adopted a balancing approach to determine whether good cause has been shown. The following factors should be considered:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir.1995) (quoting *Pansy,* 23 F.3d at 787–91). "Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public." *Pansy,* 23 F.3d at 787 (citing Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv.L.Rev. 427, 435 (1991)).

Systemhouse argues that its privacy interests are at stake because if the information is made available to the public, they will be at a "grave competitive disadvantage." (Def.'s Mem. at 5). Systemhouse contends that the County will give its proprietary information to Systemhouse's competitors who are currently bidding to take over provision of 911 services in the County. Systemhouse also argues that the County seeks this information to help it choose Systemhouse's replacement, which Systemhouse maintains is an improper purpose.

The County argues that, aside from the technical information—which they will agree to keep confidential, the other information Systemhouse wishes to keep confidential, such as how they staffed the 911 Center and how much profit they made versus how much their expenditures were, directly affects the public because it directly affects how the emergency service has been provided by Systemhouse. The County maintains that since the citizens of the County are paying for the services and since they are dissatisfied with the services they have a right to know this information. The County argues that this is particularly true as 911 services are at the heart of public health and safety and that Systemhouse, in essence, agreed to stand in the shoes of the County to provide these services to the citizens. Further, the County argues that the public has a right to scrutinize the County official's decision to hire Systemhouse and, presumably, to fire Systemhouse.[1] Finally, the County argues that much of the information for which Systemhouse seeks protection has already been made public as it was part of Systemhouse's original proposal to the County which Systemhouse expressly gave the County permission to reproduce at will. *See* (Pl.'s Mem. at 8–12 and Ex. E).

■ After balancing the factors as set out by the Third Circuit in *Glenmede* and *Pansy,* we determine that Systemhouse has either not met their burden of demonstrating the need for protection or has not shown that their privacy interests trump the public right of access for the following information: profit and profit margin; cost information; pricing information; staffing analyses and projections; project management analyses, projections, plans and techniques; non-public documents (including those from, to and relating to Rural/Metro Corporation) relating to system integration or otherwise relating to matters outside the Communications Center; training and procedures files.

■ We agree with the County that the following categories of information should be subject to a confidentiality order: technical

---

**1.** The County fired Systemhouse as of July 29, 1998. *See* (Def.'s Reply Mem. at 2).

equipment specifications not publicly available; technical selection criteria utilized by Systemhouse for equipment for equipment relating to the Northampton County Communications Center; technical information relating to the interaction of the Communications Center equipment with other Systemhouse equipment; and non-public personnel and recruiting files.

## CONCLUSION

An appropriate Order follows.

## ORDER

AND NOW, this 3rd day of September, 1998, upon consideration of Defendant, SHL Systemhouse's, Motion for Protective Order and Plaintiff and Third Party Defendant's responses thereto as well as the reply memoranda of the parties, it is hereby ORDERED that, in accordance with the foregoing Memorandum, the Motion is GRANTED IN PART and DENIED IN PART as follows:

A. The term "This Litigation" as used in the Protective Order shall mean the action set forth in the caption above;

B. Subject to section (C) below, a party may designate items of discovery or other information produced or disclosed, which it deems to contain confidential information, by stamping, marking or otherwise identifying such information as "produced pursuant to Protective Order" or such other designation as will clearly specify that the documents are intended to be covered by this Order. Such designation shall make such items and all copies, prints, summaries, or other reproductions of such information subject to this Order. Appropriately marked information and documents shall be deemed "Confidential Material" as that term is used in this Protective Order. Materials previously produced in This Litigation may, within thirty (30) days of the entry date of this Order, be so designated *nunc pro tunc;*

C. Only those items of discovery or other information produced or disclosed which contain the following shall be deemed to contain confidential information such that they constitute Confidential Material:

(1) Technical equipment specifications not publicly available and strictly limited to Systemhouse personnel;

(2) Technical selection criteria utilized by Systemhouse for equipment relating to the Northampton County Communications Center;

(3) Technical information relating to the interaction of the Northampton County Communications Center equipment and other Systemhouse equipment; and

(4) Non-public personnel and recruiting files;

D. To the extent that such Confidential Material has been or may in the future be used in the taking of depositions, it shall remain subject to the provisions of this Order and this Order shall extend to include the transcript pages of deposition testimony dealing with such protected information;

E. Those portions of deposition transcripts that contain or reference Confidential Material may be designated as Confidential Material within ten (10) working days after a party receives the transcript. The entire transcript shall be treated as confidential until the ten (10) days have elapsed.

F. Confidential Material shall be used solely for the purpose of conducting This Litigation and not for any other purpose whatsoever. For the purpose of conducting This Litigation, Confidential Material may be disclosed to the following persons only:

1) the attorneys working on This Litigation on behalf of any party;

2) any person not employed by a party who is expressly retained by an attorney described in paragraph F(1) above to assist in conducting This Litigation;

3) any director, officer, principal, partner, elected- or appointed official or employee of a party who is requested by the party or any of its attorneys to work on, or conference about, This Litigation;

4) the Court;

G. A party who makes any disclosure of Confidential Material permitted under this agreement shall provide each person to whom disclosure is made with a copy of this

Protective Order and advise each such person concerning the terms of this Protective Order. The persons to whom such disclosure is made are hereby enjoined from further disclosing such Confidential Material to any other person whatsoever;

H. The parties shall act to preserve the confidentiality of designated information. Any information subject to this Order filed with the Court or offered as evidence at trial shall be filed or offered under seal, marked to clearly identify that it is confidential, and reasonable precautions shall be taken to secure and maintain its confidentiality;

I. If the recipient of documents or information subject to this Order believes the materials should not be treated as being within the scope of this Protective Order, the recipient shall so notify counsel for the disclosing party. If counsel for the disclosing party does not agree with the recipient, the recipient may apply to the Court for a determination of the issue while observing this Order;

J. Within thirty (30) days after the conclusion of This Litigation as to all parties (meaning the time at which no further appeal or review can be taken or final settlement), all Confidential Material (and all copies thereof and all tabulations, analyses, studies, and compilations derived therefrom) shall be returned to the party who produced it; provided, that outside counsel for the parties shall be entitled to retain all memoranda embodying information derived from Confidential Material, but without source identification, such memoranda to be used only for the purpose of preserving a file on this case and not, without written permission of the producing party, to be disclosed to any other person;

K. This Protective Order shall not be abrogated, modified, amended, or enlarged except upon motion, with notice thereof given to each of the parties hereto.